■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BILLY RON ADAMS, Appellant. [763 NYS2d 347] —Kane, J. Appeal from a judgment of the County Court of Schuyler County (Argetsinger, J.), rendered September 28, 2001, upon a verdict convicting defendant of the crimes of burglary in the third degree and grand larceny in the fourth degree.

In the early morning hours of January 3, 2001, someone broke into Ray Dann's Town and Country Trading Post in the Town of Tyrone, Schuyler County, and stole cigarettes, a small amount of cash, food stamps and six shotguns. David Bennett and George Leschorn made statements implicating themselves and defendant. They entered plea bargains requiring them to testify against defendant. After a jury trial, defendant was convicted of burglary in the third degree and grand larceny in the fourth degree. County Court imposed concurrent indeterminate sentences of 3 to 6 years on the burglary charge and 2 to 4 years on the grand larceny charge.

Defendant argues that his conviction was not supported by sufficient evidence corroborating the accomplice testimony. "A defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense" (CPL 60.22 [1]). A witness is an accomplice as a

matter of law if the jury could reach no conclusion other than that he or she participated in the offense charged or another offense based on the same facts which constitute that offense (*see* CPL 60.22 [2]; *People v Besser*, 96 NY2d 136, 147 [2001]). If different inferences could reasonably be drawn from the proof regarding complicity, the jury must be afforded the opportunity to determine whether the witness is an accomplice (*see People v Sweet*, 78 NY2d 263, 266 [1991]; *People v Durham*, 248 AD2d 820, 822 [1998], *lv denied* 91 NY2d 972 [1998]). The accomplice witness must somehow be criminally implicated and potentially subject to prosecution for the conduct or factual transaction related to the crimes for which the defendant is on trial (*see People v Aleschus*, 81 AD2d 696, 697 [1981], *affd* 55 NY2d 775 [1981]). The determination of accomplice status depends on whether there is "a showing that the witness took part in the preparation or perpetration of the crime with the intent to assist therein, or that the witness counseled, induced or encouraged the crime" (*People v White*, 26 NY2d 276, 278 [1970] [citations omitted]; *see People v Wheatman*, 31 NY2d 12, 22 [1972], *cert denied sub nom. Marcus v New York*, 409 US 1027 [1972]; *People v Gerenstein*, 179 AD2d 930, 934 [1992], *lv denied* 79 NY2d 1049 [1992]).

County Court properly charged that Bennett and Leschorn, who pleaded guilty to burglarizing Dann's store, were accomplices as a matter of law (*see People v Jenner*, 29 NY2d 695, 696-697 [1971]). Defendant contends that Leschorn's wife and Bennett's girlfriend were also accomplices as a matter of law. The court charged that the jury should determine whether they were accomplices. Each of the women testified that on the night of the burglary they went to defendant's home so they could babysit his six children while he went somewhere with Bennett and Leschorn. While Leschorn's wife testified that the men never mentioned that they were planning to burglarize anything or where they were going and that she would not have babysat for defendant had she known of such plans, she also testified that she thought that her husband and Bennett were going to raid drug houses for money that night, she knew they intended to commit a crime, and she knew that by babysitting for defendant he would be free to go out and do "bad things" with the two other men.

Bennett's girlfriend testified that the men never mentioned stealing anything that night, they did not discuss their plans for the evening because she did not want to know, and Bennett specifically would not tell her what he was doing in order to protect her. She also testified that she was present in the car

on a previous occasion when Bennett and defendant burglarized a home, she knew that when they said they were going to "make money" they planned to do something illegal, the men stated that night that they were going to "make money," she babysat for defendant's children that night so he would be available to go with the other two men, and she knew they were probably going to commit a crime that night. Although the women were unaware of what establishment the men intended to burglarize, the men themselves were uncertain where they would be fortunate enough to "make money" that night. Bennett's girlfriend further testified that she was afraid of Bennett, he had beaten her up in the past, he had made threats regarding her child, and when asked to babysit that night she was afraid to say no because of how all three men might react.

The testimony of Leschorn's wife established that she believed it was probable that she was rendering aid to people who intended to commit a crime, she engaged in conduct which provided a means or opportunity for defendant to commit a crime, and her conduct actually aided defendant in committing a felony—conduct and knowledge satisfying the definition of criminal facilitation in the fourth degree (*see* Penal Law § 115.00 [1]). "Criminal facilitation may be proved though agreement was absent and it did not require proof of specific intent, only proof that the defendant had 'probable belief' that he [or she] was aiding a person intending to commit a crime" (*People v Chesler*, 71 AD2d 792, 794 [1979], *affd* 50 NY2d 203 [1980]). A witness who was a facilitator is an accomplice for corroboration purposes (*see People v Sweet*, 78 NY2d 263, 265 [1991], *supra*). The testimony of Leschorn's wife proves that she knew defendant intended to commit a crime if he was able to go with the other two men, and she had a probable belief that by babysitting for his children and allowing him to leave his home, she was aiding him and providing him an opportunity to go "make money." Under these circumstances, County Court erred in failing to charge the jury that Leschorn's wife was an accomplice as a matter of law (*see People v Beaudet*, 32 NY2d 371, 376-378 [1973]).

Notwithstanding the similarities between the situations of Leschorn's wife and Bennett's girlfriend, there is a difference. The girlfriend's testimony about being afraid could lead a jury to the inference that she babysat out of fear and had no desire to facilitate or aid in the commission of any burglary. If she was not a willing participant in or facilitator of the crime, but was compelled to cooperate through duress, she was not an ac-

complice (*see People v Besser*, 96 NY2d 136, 147 [2001], *supra*; *People v White*, 26 NY2d 276, 278 [1970], *supra* [requiring "intent to assist"]; *People v Swersky*, 216 NY 471, 475 [1916]). Thus, County Court properly charged that the jury should determine whether she was an accomplice.

County Court's failure to instruct the jury that Leschorn's wife was an accomplice as a matter of law cannot be considered harmless error on this record. Excluding the testimony of the two women, the remaining evidence was insufficient to corroborate the accomplice testimony. Because we cannot speculate concerning the jury's determination of the accomplice status of Leschorn's wife or its consideration of the evidence, we cannot discount the possibility that the jury may have believed that Bennett's girlfriend was an accomplice and, thus, erroneously relied only upon the testimony of Leschorn's wife for corroboration (*see People v Minarich*, 46 NY2d 970, 971 [1979]; *People v Jenner*, 29 NY2d 695, 696-697 [1971], *supra*; *People v Van Denburg*, 107 AD2d 891, 891 [1985]). Accordingly, defendant is entitled to a new trial. Based on our remittal, we need not address defendant's remaining contentions.

Mercure, J.P., Carpinello, Mugglin and Rose, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Schuyler County for a new trial.