People v Linares (2018 NY Slip Op 08369)





People v Linares


2018 NY Slip Op 08369


Decided on December 6, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 6, 2018

108734

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
CARLOS LINARES, Appellant.

Calendar Date: October 18, 2018

Before: Egan Jr., J.P., Clark, Mulvey, Aarons and Pritzker, JJ.


Mitchell S. Kessler, Cohoes, for appellant.
P. David Soares, District Attorney, Albany (Vincent Stark of counsel), for respondent.



MEMORANDUM AND ORDER
Pritzker, J.
Appeal from a judgment of the Supreme Court (McDonough, J.), rendered July 1, 2016 in Albany County, upon a verdict convicting defendant of the crime of criminal possession of a weapon in the second degree.
After a jury trial wherein defendant and a codefendant were tried together, defendant was convicted of one count of criminal possession of a weapon in the second degree in connection with a police investigation during which detectives used a confidential informant (hereinafter CI) to set up a meeting to purchase firearms. At that meeting, police seized five weapons and ammunition from a vehicle and arrested the occupants of the vehicle — defendant, the codefendant and two others. Thereafter, Supreme Court sentenced defendant to five years in prison, followed by five years of postrelease supervision. Defendant now appeals. We affirm.
The verdict is not against the weight of the evidence. A weight of the evidence review requires us to "first determine, based on all of the credible evidence, whether a different result would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Wilson, 164 AD3d 1012, 1014 [2018]; see People v Danielson, 9 NY3d 342, 348 [2007]; People v Perry, 154 AD3d 1168, 1169 [2017]). As charged here, a defendant is guilty of criminal possession of a weapon in the second degree when he or she "possesses any loaded firearm" and such possession does not take place in that person's "home or place of business" (Penal Law § 265.03 [3]).
At trial, Kevin Meehan, a City of Albany police detective, testified that he worked with the CI who told him that he had a connection in New York City who would sell him firearms. Meehan stated that he did some preliminary research into the CI's connection and discovered that the phone number the CI used to contact him was registered to a man from Virginia, known as Karreim Richardson, the codefendant, who ultimately became the target of the investigation. In a recorded phone call, the CI arranged for Richardson to bring firearms to the Albany area. [*2]Meehan testified that on July 19, 2015, the CI and Richardson made arrangements to meet at the University at Albany to complete the transaction. According to Meehan's testimony, he observed a vehicle in a parking lot with a Virginia registration that matched the location as described by Richardson to the CI. Meehan stated that he observed four people in the vehicle and that eventually those four people were taken into custody. Scott Gavigan, another police detective, testified that he worked with Meehan in this investigation, searched the vehicle and found: (1) a loaded handgun next to the driver's seat; (2) three handguns in a shoe box, which was inside an orange bag stowed in the back of the vehicle; (3) a semiautomatic rifle in the third row seat, which had been folded down; (4) a magazine for the rifle under the seat where the rifle was found; and (5) various ammunition in a plastic bag. Two additional police detectives testified to having conducted test fires of the weapons found in the vehicle, using the ammunition also found in the vehicle, and that all of the firearms, including the semiautomatic rifle found under the third row seat, were operable.
Jessica Brissett testified that she is an acquaintance of defendant and Richardson and that, on the morning of July 19, 2015, they came to her house in Brooklyn. When they arrived, Brissett stated that she saw defendant carrying a large gun, which she told him to put in a closet. Brissett testified that the men left for a few hours and, when they returned, they asked her if she wanted to accompany them to Albany. Brissett invited her friend, Keisha Jeffrey, to join them. Brissett testified that defendant was carrying the large gun at his side when he left her house. Brissett stated that Jeffrey got into a black SUV and sat behind the passenger seat. Brissett heard defendant ask Jeffrey to pass the large gun to him in the back. Brissett testified that when they arrived in Albany, they parked in an area with vending machines and, after a "couple minutes," police ran up to the vehicle, ordered them to drop everything and she was arrested. Brissett also testified that she was appearing at trial under subpoena and that the case against her would be dismissed in exchange for her "truthful testimony."
Jeffrey also testified that she was acquainted with defendant and Richardson and that she agreed to travel with them to Albany. Jeffrey stated that before the group left for Albany, she observed defendant take a large gun from a closet at Brissett's house and that defendant placed it in the center console of the vehicle. Brissett testified that she told defendant that they could not drive like that, so defendant got out of the car and went to the back of the car, putting the gun under the folded down back seat after Jeffrey passed it to him from the front of the vehicle. Jeffrey further testified that when they arrived in Albany, they parked in a parking lot near a vending machine and that Richardson made a call, while defendant and Brissett went to use the vending machine. Once everyone had returned to the vehicle, she testified, the police showed up and she was arrested.
Carrie Pettit, a forensic scientist at the State Police Forensic Investigation Center, testified that she tested the guns recovered from the vehicle for DNA and found two sets of DNA on the large gun, one for a female major contributor and one for a minor contributor that was insufficient to determine whether it came from a male or a female. On cross-examination, defendant's counsel explicitly asked Pettit whether defendant's DNA was found on any of the weapons recovered from the vehicle and Pettit stated, "There wasn't enough information to make an inclusion or an exclusion."
Based on the foregoing, another verdict would not have been unreasonable (see People v Danielson, 9 NY3d at 348; People v Wilson, 164 AD3d at 1014); however, both Brissett and Jeffery testified that they saw defendant with the gun earlier in the day and that they saw defendant load the gun into the vehicle, even helping him do so. This testimony was consistent with the testimony of Pettit, who testified that female DNA was found on the large gun, which corresponds to the account given by both Brissett and Jeffrey that Jeffrey handled the gun. Also, both Brissett and Jeffrey testified that defendant put the gun under the folded down back seat, which is where Gavigan testified to finding the gun. To the extent that defendant alleges that the testimony of Brissett and Jeffrey is not credible, such credibility issues are within the province of the jury to resolve, and we accord deference to its determination (see People v Favors, 155 AD3d 1081, 1083 [2017]; People v Bowman, 139 AD3d 1251, 1252 [2016], lv denied 28 NY3d 927 [*3][2016]; People v Griffin, 26 AD3d 594, 596 [2006], lv denied 7 NY3d 756 [2006]). Thus, we do not find defendant's conviction to be against the weight of the evidence (see People v Favors, 155 AD3d at 1083-1084; People v Worthington, 150 AD3d 1399, 1401-1402, lv denied 29 NY3d 1095 [2017]; People v Graham, 138 AD3d 1242, 1243 [2016], lv denied 28 NY3d 930 [2016]).
We turn next to defendant's arguments regarding Supreme Court's instructions to the jury. Initially, by not objecting when the charge was given or raising this issue at the charge conference, defendant failed to preserve his argument that the court erred in charging the jury that it was not to draw an adverse inference from defendant's decision not to testify (see People v Williams, 163 AD3d 1160, 1164 n [2018]; People v Robtoy, 144 AD3d 1190, 1192 [2016], lv denied 28 NY3d 1150 [2017]). Defendant also argues that Supreme Court improperly denied his request for the "impeachment by benefit conferred" jury instruction, instead giving the interested witness instruction. In reviewing the record, defendant's counsel specifically questioned Brissett on her motivation to testify, highlighting that she was told that the case against her would be dropped in exchange for her testimony. Moreover, during summation, defendant belabored the notion that both Brissett and Jeffrey could be lying to help the People so that the charges against them would be dropped. Considering the charge that was given in the context of the trial, the jury charge was sufficient to give the jury notice that it should carefully scrutinize the testimony of Brissett and Jeffrey (see People v Miller, 160 AD3d 1040, 1044 [2018], lv denied 32 NY3d 939 [2018]; People v Acevedo, 112 AD3d 985, 988 [2013], lv denied 23 NY3d 1017 [2014]; People v Wilson, 100 AD3d at 1048).
We also reject defendant's argument that he was denied the effective assistance of counsel due to a failure to request an accomplice-in-fact jury instruction. Defendant has failed to sufficiently show that there was no legitimate trial strategy behind the decision not to request this jury instruction (see People v Williams, 156 AD3d 1224, 1231 [2017], lv denied 31 NY3d 1018 [2018]; People v Lawrence, 141 AD3d 828, 833 [2016], lvs denied 28 NY3d 1071, 1073 [2016]; People v Thorpe, 141 AD3d 927, 934 [2016], lv denied 28 NY3d 1031 [2016]). Moreover, when reviewing trial counsel's representation in its entirety, we are satisfied that defendant received the effective assistance of counsel (see People v McCauley, 162 AD3d 1307, 1311 [2018], lv denied 32 NY3d 939 [2018]; People v Ariosa, 100 AD3d 1264, 1266 [2012], lv denied 21 NY3d 1013 [2013]).
Egan Jr., J.P., Clark, Mulvey and Aarons, JJ., concur.
ORDERED that the judgment is affirmed.